UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                   )<br>)<br>ERIC CHIN,                                       )<br>            Defendant.              ) | Crim. No. 18-cr-10384-RGS |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through the undersigned Assistant U.S. Attorneys, requests that on March 20, 2019 the Court sentence defendant Eric Chin (hereinafter, "defendant" or "Chin") to a three month term of imprisonment, a sentence that is three months below the low end of the United States Sentencing Guidelines ("Guidelines") as calculated by the United States Probation Office.

**Facts**

**A. Introduction**

In early 2017, the Massachusetts State Police ("MSP") began an internal investigation of several overtime programs within what was then known as Troop E.[1] Troop E was primarily responsible for enforcing criminal law and traffic regulations on Interstate-90, the Massachusetts Turnpike ("I-90"), which spans the Massachusetts/New York border to the Boston Harbor.

In early 2018, MSP announced that an internal audit had revealed over 40 troopers who were suspected of failing to work some or all of the overtime shifts for which they had been paid.

---

[1] Troop E has since been disbanded and its members and responsibilities absorbed into other MSP troops.

Soon after, the United States Department of Transportation and FBI began an investigation of the suspected overtime abuse.

As a result of that investigation, seven former troopers (including this defendant) and one former lieutenant, were charged in this court with embezzling funds from an agency receiving federal funding, in violation of 18 U.S.C. §666. As of this date, all eight have pleaded guilty to the charges.

### B.   The Abuse of Troop E Overtime Programs

In addition to salary for a regular 8-hour work shift, Troopers within Troop E were also able to earn hourly overtime pay equivalent to 1.5 times their regular hourly pay rate for various overtime assignments. Depending upon seniority, troopers were paid between approximately $60-75 per hour, while Lieutenants could make $100 per hour, or more.

One of these overtime programs was the "AIRE" (Accident and Injury Reduction Effort) program. The objective of the AIRE program was to reduce accidents, crashes, and injuries on I-90 through an enhanced presence of MSP Troopers patrolling I-90 and targeting vehicles traveling at excessive speeds and to reduce aggressive driving behaviors.[2]

Troopers were expected to issue a minimum of 8-10 citations for each AIRE shift. Any failure to issue the required number of citations had to be explained to supervisors and command staff. Repeated failures to meet this quota often resulted in a trooper being blocked from receiving such overtime opportunities.

---

[2] These shifts were 4-hours long and organized by letter according to a specific shift: A-AIRE from 7:30 a.m. to 11:30 a.m.; B-AIRE from 11:00 a.m. to 3:00 p.m.; C-AIRE from 3:30 p.m. to 7:30 p.m.; and D-AIRE from 7:00 p.m. to 11:00 p.m.

Investigation has revealed that these troopers performing AIRE Overtime routinely and regularly did not work the full four hours required. Troopers assigned to these shifts who chose to abuse this overtime benefit would write the minimum number of tickets, and then simply go home. In many instances, these troopers would obtain the minimum number of citations in an hour, or less.

In other circumstances, such as inclement weather, these troopers would forgo writing any citations at all. In the event of such weather, policy required troopers working these overtime shifts to continue to work, *i.e.*, "re-deploy," as directed by superiors. In practice, inclement weather meant neither tickets, nor work, was required for troopers abusing the AIRE program. Reminiscent of a grade school "snow day," these troopers treated the AIRE overtime program as if it were a paid holiday.

### C. The Defendant

1. Employment

Chin became a Massachusetts State Trooper in 2002 and was a member of the state police until his suspension in April of 2017. Since approximately 2010, Chin has also operated a business involved in the management of real estate. Since his separation from MSP, Chin has worked full time on this business.

2. Defendant's Criminal Conduct

In 2016, this Defendant's total MSP compensation was $302,400, including approximately $131,653 in overtime pay. This 2016 overtime included compensation for over 60 AIRE overtime shifts, during which Chin earned approximately $75 per hour. On a regular basis, Chin did not

3

work the entire four hour shift, despite being paid for having done so. On at least one occasion, Chin was paid for an overtime shift for which he did not show up at all.

In order to be paid for overtime hours that were not worked, Chin made fraudulent and false claims to MSP and created fraudulent and false paperwork throughout the duration of the criminal scheme. These false representations and submissions included, but were not limited to: (1) fraudulent traffic citations, including citations on which the dates of the events were changed in order to be paid for hours that were not worked at all; (2) false "AIRE Activity Cards," claiming to have worked a complete four hour shift and claiming to have done work that was not done; and (3) false payroll submissions claiming to have worked overtime hours that he did not. This conduct continued throughout the duration on the year-long scheme.

A comprehensive review of available records revealed that Chin was not present, and not working, for approximately 95 hours of AIRE overtime. At a rate of $75 per hour, MSP paid Chin approximately $7,125 from AIRE overtime hours that he did not work.

### Advisory Sentencing Guidelines

The parties' positions with respect to the Sentencing Guidelines, which are set forth in pages 2-3 of the plea agreement, are:

(i) in accordance with USSG §§ 2B1.1(a)(2), defendant's base offense level is 6, because the offense of conviction has a statutory maximum term of imprisonment of less than 20 years;

(ii) in accordance with USSG §§ 2B1.1(b)(1)(B), defendant's offense level is increased by two levels because the offense involved a loss in excess of $6,500 but less than $15,000;

    (iii)    in accordance with USSG §§ 2B1.1(b)(10), defendant's offense level is increased by two levels because the offense involved sophisticated means; [3]

    (iv)    in accordance with USSG §§ 3B1.3, defendant's offense level is increased by two levels because the offense involved the abuse of a position of trust;

    (v)    in accordance with USSG §3E1.1, the U.S. Attorney agrees to recommend that the Court reduce by two levels defendant's adjusted offense level because of defendant's prompt acceptance of personal responsibility for the offense conviction in this case.

Accordingly, the total offense level is 10. Mr. Chin's criminal history category is I, which results in a GSR of 6 to 12 months' imprisonment. Presentence Investigation Report ("PSR") at ¶¶40, 86.

---

[3] The First Circuit and its sister circuits have stated that the illustrative list provided by the Guidelines is by no means exhaustive and that "'the [sophisticated means] enhancement properly applies to conduct less sophisticated' than the examples." *United States v. Foley*, 783 F.3d 7, 25 (1st Cir. 2015) (citing approvingly to *United States v. Jennings*, 711 F.3d 1144, 1147 (9th Cir. 2013)). In *Jennings*, the court rejected the defendant's narrow construction of sophisticated means, in part, "because the enhancement 'does not require a brilliant scheme, just one that displays a greater level of planning or concealment than [the usual type of crime at issue.]'" *Id*. (internal citation omitted).

    Moreover, the First Circuit has held that this enhancement is appropriate in cases involving numerous, even repetitive, steps regardless of whether each step was sophisticated. *See, e.g., Foley*, 783 F.3d at 25; *see also United States v. Duell*, 463 F. App'x 214, 215 (4th Cir. 2012)(finding enhancement applied when defendant used a legitimate account for illegitimate purposes by creating false financial statements and forging signatures). In *Duell*, the defendant, a financial secretary for a local church, transferred money between the church's accounts for three years and ultimately deposited it into his business account. 463 F. App'x at 215. He then concealed the fraud simply by deleting the transactions from the report that he prepared for the oversight committee. *Id*. The Fourth Circuit found this to qualify as sophisticated means because "[the defendant] took deliberate steps to make his offense difficult to detect over a period of years." *Id*. at 216. In the instant case, Chin's scheme qualifies for the sophisticated means enhancement because Chin took multiple steps that were carefully orchestrated and effectively designed with the principal purpose of concealing and sustaining this abusive and lucrative scheme.

**Argument**

Few crimes strike at the core of the justice system more than those involving law enforcement officers who choose to break, rather than uphold, the law. Though at its heart a crime motivated by simple greed, it is far more troubling than the run of the mill fraud cases in this court. This crime, and the abusive culture it served to perpetuate, reflect a betrayal of the trust and power granted to those who serve in law enforcement.

Though the amounts involved in this crime are not large, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the conduct, dictate a sentence of three months incarceration, a one year term of supervised release, and the payment of restitution to the MSP.

> Respectfully submitted,
>
> ANDREW E. LELLING
> United States Attorney
>
> By:   */s/ Mark Grady*
> MARK GRADY
> DUSTIN CHAO
> Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

> */s/ Mark Grady*
> MARK GRADY
> DUSTIN CHAO
> Assistant U.S. Attorneys

Date:   March 13, 2019